Douglas E. McKinley, Jr., *Pro Hac Vice*
Attorney At Law
8350 W Grandridge Blvd, Ste 200-431
Kennewick, WA 99336
doug@mckinleylaw.com
phone 509-628-0809
fax 509-392-8083

Christopher R. Blodgett, OSB No. 226732
Leavy Schultz Davis
2415 W Falls Ave
Kennewick, WA 99336
cblodgett@tricitylaw.com
phone 509-736-1330
fax 509-736-1580

Attorneys for Defendants
SOLGEN POWER LLC
VERITY CREDIT UNION

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WILLIAM MCGAIR, | |
| Plaintiff, | Case No. 3:23-cv-00162-HZ |
| vs. | EXHIBIT 1 TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. (12)(b)(6) |
| SOLGEN POWER LLC, et al., | |
| Defendants. | |




(509) 931-1663
5715 Bedford St
Pasco, WA 99301
SOLGEPL830RJ

# PURCHASE AND INSTALLATION AGREEMENT

## CUSTOMER INFORMATION

| Full Name | | | |
|---|---|---|---|
| William McGair | | | |
| Street Address | City | State | Zip Code |
| 3105 N Holman St | Portland | OR | 97217 |
| Phone Number | | Email | |
| (503) 975-6408 | | bill@mcgair.com | |

## PRICING

| Contract Price | $36,218.18 | Down Payment | $0.00 |
|---|---|---|---|
| Tax | $0.00 | Amount due At Signing | $36,218.18 |
| Total Amount | $36,218.18 | Amount due | $0.00 |
| | | Finance Method | LoanHomi |

**Final payment will be due after completion of on-site installation of the solar panels and inverters and obtaining final inspection with the local jurisdiction. Interconnection with the utility may take several weeks to complete after installation of the system. Customer understands that the final payment will not be withheld due to any delays from the utility company.

*William McGair*                                                         2/4/2022
William McGair                                Date

*WM*
_____(Initial here). BY PLACING YOUR INITIALS HERE, YOU ARE CERTIFYING THAT THE ENERGY ADVISOR HAS EXPLAINED TO YOU YOUR RIGHT TO CANCEL WITHIN THREE DAYS OF THIS AGREEMENT AS DESCRIBED IN MORE DETAIL IN A SEPARATE NOTICE WHICH YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED. YOU FURTHER UNDERSTAND AND AGREE THAT UNLESS AND UNTIL YOU EXERCISE YOUR RIGHT TO CANCEL AS PRESCRIBED IN THE NOTICE YOU RECEIVED, ALL AMOUNTS PAID BY YOU TO THE COMPANY ARE NONREFUNDABLE.

## 3 DAY RIGHT OF CANCEL

| COMPANY | | CUSTOMERS |
|---|---|---|
| Company Representative<br>Chris Lee | Title<br>Owner | Customer Name<br>William McGair |

*Chris Lee*                                   2/4/2022
Company Signature                  Date

*William McGair*                              2/4/2022
Customer Signature                 Date



# PURCHASE AND INSTALLATION AGREEMENT

1.  **Scope of the Work**. In consideration of the Contract Price, the Company, agrees to provide or cause to be provided the labor, materials, tools and equipment for the provision and the installation of the solar energy system, more specifically described on Exhibit A ("the Solar Array") which is attached and incorporated into this Agreement.

2.  **Estimated Completion Date.** It is anticipated that the installation of the Solar Array shall commence on or around the day set forth on the first page of this Agreement and will take approximately 8 – 14 weeks to complete. Notwithstanding anything in this Agreement to the contrary, the actual commencement date and the completion date may vary due to circumstances out of the Company's control, such as project conditions, weather, material availability, Force Majeure, etc. The Company does not guaranty that the installation of the Solar Array will start on or before the estimated commencement date or be completed on or before the estimated completion date set forth on the first page of this Agreement.

3.  **Contract Price**

    3.1.    Timely Payment of the Contract Price. The Customer agrees to pay the Contract Price as set forth on the first page of this Agreement. If the Customer fails to pay any amount when due, time being of the essence, the Company may cease work pending payment or resolution of any dispute. A rate of 2% interest per month or the maximum allowable by law, whichever is less, will be assessed to the outstanding balance. Until the time that Customer has paid Company the entire Contract Price, Customer grants the Company and its agents the right to enter the property and remove the Solar Array in whole or in part. Customer agrees the Solar Array is not a fixture but will remain personal property at all times until all amounts have been paid to the Company. Ownership of the Solar Array will remain with the Company until the Customer has timely paid the full Contract Price. To the extent the Customer may be considered the owner of the Solar Array despite the foregoing, Customer grants Company a security interest in the Solar Array to secure payment of all amounts due under this Agreement, and grants Company the maximum rights available under applicable law in enforcing that security interest. Company may repossess the Solar Array without the requirement for judicial process. The Company also may assert all rights under Washington law relating to contractor/mechanic liens on real property, with respect to the Customer's property.

      3.2.    Change Order. The Contract Price may be changed if either (a) a written change order affecting or altering the scope of the work is mutually executed by Company and Customer and the written change order states the precise dollar amount by which the Contract Price will be changed, or (b) extraordinary and unforeseeable events or circumstances beyond the control of the Company and that could not have been anticipated have made completion of the work substantially and materially more expensive.

      3.3.    Cancellation Fees. In the event of a cancellation that is outside of the 3 day right of rescission, the Customer will be responsible for a cancellation fee of $3,500 or 10% of the total contract price, whichever is less. The cancellation fee is due immediately and Section 3.1 will apply to any outstanding balance that is owed.

4.    **Credit Cards / Financing**. Customer is free to obtain financing from the institution of the Customer's choice, but the Company can provide Customer with an application from a third-party lender if necessary. If Customer pays the Contract Price with a personal credit card, Customer authorizes the Company to charge an additional 3.5% to the amount charged on such credit card.

5.    **Limitations of Liability**. The Company is not liable, nor will ever be liable, for (i) any delay due to circumstances beyond its control including strikes, casualty, weather, permitting delays, or general unavailability of materials; or (ii) damage to old, deteriorated or improperly installed sub-roofing, roof coverings or supports, siding, exterior covering/painting, non-permitted structures, or any other non-visible to installation. The Company's aggregate liability under this Agreement and/or relating in any way to the work performed is at all times limited to a refund of amounts paid by Customer to the Company under this Agreement, and Customer waives any claim for additional damages beyond that refund amount. Customer shall provide access and make bare the areas such as walls, roof, crawl space, floors, TV/Cable, utilities, etc. as necessary to performance of the work described herein. The Company specifically disclaims and disavows any guaranteed output of the installed Solar Array, including any claims made orally or in writing by the Company or its employees or agents. The Customer waives all claims against the Company for compensatory, punitive, incidental and/or consequential damages arising out of or in any way relating to this Agreement and the actions and omissions relating in any way to the subject matter of this Agreement. Neither the Company nor Customer is liable for any default, delay, or failure in the performance under this contract due to Force Majeure. Force Majeure includes acts of God such as storms, fire, floods, lightening, earthquakes, war, riots, acts of public enemy or other civil disturbance or a strike, lockout, walkout, or other significant labor disputes. Force Majeure cannot be attributed to fault or negligence on the part of the party claiming Force Majeure and must be caused by things beyond parties' reasonable control.

6.  **Warranty**

6.1. Manufacturer's Warranty. The manufacturer of the Solar Array and any associated components may provide a manufacturer's warranty relating to the equipment. All warranties can be obtained by the Customer directly from the manufacturer and any claims for a manufacturer defect must be directed to the manufacturer and not the Company. The Company may assist the Customer in identifying any applicable manufacturer's warranty(ies) solely as a courtesy.

6.2. Labor Warranty. The Company warrants the installation of the system against defects in workmanship for a period of ten years following the conclusion of on-site installation (the "Labor Warranty"). This Labor Warranty does not cover Force Majeure, damage covered or normally covered by homeowner's insurance such as falling tree branches, power outages, power surges, other contractor defects, normal wear and tear of the roof, roof shingle failure, sub- structure failure, or siding or electrical system failures. The Labor Warranty also does not cover any damages caused by animals or by improper maintenance of the structure or the system or by any action of parties other than the Company. If the Customer discovers an installation defect within the Labor Warranty period, Customer must immediately notify the Company in writing describing the nature of the defect. If the defect is found to be due to negligence on the part of the Company during installation, the Company will correct the defect at no additional charge to the Customer. If a part repair or replacement is required due to manufacturer's warranty, Customer must first obtain warranty coverage from the manufacture and only then will the Company remedy the workmanship defect. Customer shall bear the costs of all repairs and replacements not expressly covered by the Labor Warranty.

6.3. Roof Penetration Warranty. The Company warrants that the areas around any rooftop equipment installation where penetrations to the roof were necessary for installation of the photo-voltaic system, up to a radius of 3 feet, will be free of leaks. The period of this warranty is 5 years after completion and satisfactory third-party inspection of the installation. Exclusions to this 5-year warranty are defined as: any leak determined by a third party inspector to be pre-existing or new damage or other roof failure within the installation radius that was due to other factors besides penetrations made during installation.

6.4. OTHER THAN THE LABOR WARRANTY EXPRESSLY DESCRIBED ABOVE, THERE IS NO WARRANTY BY THE COMPANY WHETHER EXPRESSED, IMPLIED, INCLUDING, WITHOUT LIMITATION, THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A GENERAL OR SPECIFIC PURPOSE, AND CUSTOMER WAIVES ALL CLAIMS TO ANY SUCH WARRANTIES AND TO ALL DAMAGES OF ANY NATURE.CUSTOMER IS RESPONSIBLE FOR ALL MAINTENANCE OF THE SOLAR ARRAY; MAINTENANCE IS NOT A PART OF THE LABOR WARRANTY AND PROPER MAINTENANCE IS A CONDITION TO THE CONTINUED VALIDITY OF THE LABOR WARRANTY.

7.  **Rebate / Tax Credit Program.** All rebates and tax credits are issued through third parties and the Company does not guaranty the availability of or Customer's eligibility for any rebates or tax credits. The Company may assist the Customer in identifying the programs that offer rebates, incentives, and/or tax credits, applicable to the Customer's specific situation, solely as a courtesy to the Customer.

8.      **No Guarantee or Representation of Energy Savings or Cost Savings.** The Company does not guarantee any energy savings, efficiencies, or cost savings through the use of the Solar Array. Information provided about energy savings, efficiencies, and cost savings is solely for illustrative purposes and is based on historic data and information obtained and provided by the manufacturer and other third parties. The Company makes no representation regarding the accuracy of the information provided. Customer assumes all risk relating to reliance upon any information provided.

9.      **No Authority of Alter Terms.** No sales representative has the authority to add, delete, or modify the typed terms of this agreement, either in writing or verbally. Customer agrees it is not relying on verbal assurances or statements of any person.

10.     **Arbitration / Mediation**. All disputes arising out of or relating to this Agreement shall be resolved by either mediation or binding arbitration in accordance with the rules of the American Arbitration Association under construction industry arbitration rules. The parties recognize and agree that by agreeing to this provision they are waiving any rights they may have to a jury trial. Judgment or settlement on the award may be entered in any court having jurisdiction thereof.

11.     **General Provisions**
        11.1.   Notice. Any notice required or permitted to be given hereunder shall be in writing and be delivered by courier, mail, or hand delivery, and will be deemed to have been delivered upon delivery. The address for such communication to the Company shall be Solgen Power LLC, 5715 Bedford St. Pasco, WA 99301 and for the Customer shall be at the address first stated in this Agreement or at such other address as may be given by either party in writing.
        11.2.   Governing Law. This Agreement will be governed and constructed under the laws of the State of Washington without regard to conflict of laws.
        11.3.   Waiver / Severability/Assignment. The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder. If any provision of this Agreement is determined to be invalid or unenforceable under any applicable statue or rule of law, it is to that extent to be deemed omitted, and the balance of the Agreement shall remain enforceable. Company may assign the Agreement at any time. Customer may assign this contract only with Company's written permission, in Company's sole discretion, and any assignment by Customer without Company's advance written permission will be void.
        11.4.   Attorney's Fees/Cost. If any action is brought by either party to enforce or interpret this Agreement, or if either party incurs attorneys' fees on account of any breach of this Agreement, the party prevailing must be awarded from the other party payment of all costs and expenses, including attorneys' fees, cost, etc., reasonably incurred.
        11.5.   Joint and Several Liability. If any party includes multiple persons, each such person is jointly and severally responsible for all obligations of that party.

**THIS CONTRACT CONTAINS A WAIVER OF JURY TRIAL AND A BINDING ARBITRATION PROVISION WHICH AFFECTS YOUR LEGAL RIGHTS.**

12. **Marketing Release**

12.1. I grant permission to Solgen Power and its agents and employees the irrevocable and unrestricted right to reproduce the photographs and/or video images taken of me, my property, or members of my family, for the purpose of publication, promotion, illustration, advertising, or trade, in any manner or in any medium. I hereby release Solgen Power and its legal representatives for all claims and liability relating to said images or video. Furthermore, I grant permission to use my statements that were given during a testimonial, with or without my name, for the purpose of advertising and publicity without restriction. I waive my right to any compensation.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound, agree to the terms of this Purchase and Installation Agreement by signing below as of the date set forth below.

## SIGNATURES

| COMPANY | | CUSTOMERS | |
|---|---|---|---|
| Print Name<br>Chris Lee | Title<br>Owner | Print Name<br>William McGair | |
| *Chris Lee*<br>Company Signature | 2/4/2022<br>Date | *William McGair*<br>Customer Signature | 2/4/2022<br>Date |

## SYSTEM SPECIFICATIONS

**EXHIBIT A**
(Description of PV system work to be performed)

| | |
|---|---|
| System Size* | 6.84 |
| PV Modules | Top Tier All Black Solar Panel |
| Inverter | MICRO -Inverters Hoymiles |

*The system design may change based on a detailed engineering site audit. Actual system production, solar panel type, offset and savings will vary based on the final system size, design, configuration, utility rates, applicable rebates, system location, local climate and your family's energy usage. System size will be no less than the agreed upon size defined in this sales contract

Customer SHALL PROVIDE

1. Customer agrees to cooperate fully in performance of the contract work and to provide safe work environment, and Timely access to the roof or other areas upon which the system is to be installed.

2. Customer represents and warrants that there are no restrictions or covenants of which it should reasonably be aware that would prevent the installation of the Solar Array.

3. Customer shall be responsible for removing or covering any items inside or outside the structure that might be soiled or damaged by the performance of work by the contractor.


_WM_ (Initial here)

— PROJECT SPECIFICATIONS —

**EXHIBIT B**
(Description of additional work to be performed)

Customer SHALL PROVIDE

1. Customer agrees to cooperate fully in performance of the contract work and to provide safe work environment, and Timely access to the roof or other areas upon which the system is to be installed.

2. Customer represents and warrants that there are no restrictions or covenants of which it should reasonably be aware that would prevent the installation of the Solar Array.

3. Customer shall be responsible for removing or covering any items inside or outside the structure that might be soiled or damaged by the performance of work by the contractor.

_WM_ (Initial here)

NOTICE OF CANCELLATION (duplicate required)

Date of transaction: _____

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE OF TRANSACTION LISTED ABOVE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE COMPANY OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE COMPANY AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE COMPANY REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE CUSTOMER'S EXPENSE AND RISK.

IF YOU DO NOT AGREE TO RETURN THE GOODS TO THE COMPANY OR IF THE COMPANY DOES NOT PICK THEM UP WITHIN 30 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, TO SOLGEN POWER LLC, NOT LATER THAN MIDNIGHT OF 2022-02-09.

(Date at least three business days from date of transaction).

_____    _____
Company Signature              Date        Customer Signature             Date

NOTICE OF CANCELLATION (duplicate required)

Date of transaction: _____

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE OF TRANSACTION LISTED ABOVE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE COMPANY OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE COMPANY AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE COMPANY REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE CUSTOMER'S EXPENSE AND RISK.

IF YOU DO NOT AGREE TO RETURN THE GOODS TO THE COMPANY OR IF THE COMPANY DOES NOT PICK THEM UP WITHIN 30 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, TO SOLGEN POWER LLC, NOT LATER THAN MIDNIGHT OF  2022-02-09.

(Date at least three business days from date of transaction).

_____        _____
Company Signature                    Date       Customer Signature                    Date

DocuSign Envelope ID: 368C4325-21B5-477D-B66A-BC5B4AF4A7E0

## Solgen Power Solar Stimulus Package

As part of the Solgen Power Stimulus Package, Solgen Power agrees to cover your initial solar payments until on or about 2022-08-02. Solgen Power will work directly with the bank to cover these payments. The customer will not receive a bill from Verity Credit Union for the first six months.

## RETAIL INSTALLMENT CONTRACT



In this Retail Installment Contract ("Contract"), the words "we," "us," "our" and "Seller" mean the Seller identified below, and Seller's successors and assignees. The words "you," "your," and "Buyer" mean the Buyer identified below who signs or authenticates this Contract. Words or phrases preceded by a checkbox (☐) are only applicable if the checkbox is marked (e.g. ☒).

| Date of Contract | Contract Maturity Date |
|---|---|
| 03/06/2022 | 03/06/2047 |

**SELLER** *(Name and Address)*
Solgen Power



Tax ID #

**BUYER** *(Name and Address)*
William McGair

3105 N Holman St
Portland, OR, 97217

You (Buyer) agree to buy, subject to the terms of this Contract, and we (Seller) agree to sell the Goods and Services described below in the section "Description of Goods and Services." The goods covered by this Contract are sold in their current condition, together with any attachments or accessories.

**DESCRIPTION OF GOODS AND SERVICES** *(e.g. Make, Model, Serial Number, etc.)*
Solar products in accompanied installation agreement

You promise to pay us according to the terms of this Contract, including the terms set forth in the Federal Truth-In-Lending Disclosure which is an integral part of this Contract. All payments to us must be in lawful money of the United States of America.

To secure payment of this Contract and your other promises under this Contract, you give us a security interest in and/or a lien upon the goods described above and all accessories, parts, equipment, attachments, and accessions placed on or in the goods. Our security interest extends to any replacements of the goods which you purchase within 10 days of the date of this Contract or any extensions, renewals, or refinancings of this Contract. You further grant us a security interest and assignment in the proceeds of any policy of insurance covering the goods purchased with this Contract.

**This Contract is subject to a fixed Simple Interest Rate of** 3.9900 **% per annum. Interest will begin to accrue at the Simple Interest Rate on the** 03/06/2022 **day following the Date of Contract.**

### FEDERAL TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit including your down payment of:<br>$ 36218.18 . |
|---|---|---|---|---|
| 3.9900 % | $ 21857.98 | $ 36218.18 | $ 58076.16 | $ 0.00 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When payments are due |
|---|---|---|
| 1 - 18 | 122.73 | Monthly begin 04/05/2022 |
| 19 - 300 | 198.11 | 10/05/2023 |

**Security:** You are giving us a security interest in: ☒ the goods or property being purchased; ☐ _____
☐ **Required Deposit.** The Annual Percentage Rate does not reflect the effect of the required deposit.
**Late Charge:** If your payment is more than 10 days late, you will be charged a fee of 5.0% of the past due payment, subject to a minimum of $10.00.
**Prepayment:** If you pay off early, you will not have to pay a penalty.                    **Filing Fee:** $ 200.00
See the text of this Contract for additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| A. Cash Sale Price | | D. Amount Paid to Public Officials (UCC Fin. Stmt.) | $ 200.00 |
| 1. Cash Sale Price | $ 36218.18 | E. Unpaid Principal Balance (C + D) | $ 36218.18 |
| 2. State Sales Tax | $ | F. Required Deposit Balance | $ |
| 3. Total Cash Sale Price (A1 + A2) | $ 36218.18 | G. Amount Financed (E – F) | $ 36218.18 |
| B. Cash Down Payment | $ 0.00 | H. **Finance Charge** (Service Charge) | $ 21857.98 |
| C. Unpaid Balance of Cash Price (A3 – B) | $ 36218.18 | I. Time Balance (Time Sale Price) (G + H) | $ 58076.16 |

**ADDITIONAL TERMS OF CONTRACT**

**Repayment.**  You promise to pay to Us the Amount Financed (the unpaid portion of the Cash Sale Price) plus all accrued interest and other finance charges according to the Payment Schedule set forth in the Federal Truth-In-Lending Disclosure on Page 1 of this Contract.  The scheduled payment amounts shown on Page 1 include interest computed at the Simple Interest Rate shown on Page 1 from the date finance charges begin to accrue, as also shown on Page 1.  You promise to make payments until the entire Amount Financed and all accrued interest and any other fees and charges have been paid in full.

During the first 18 months of this Contract, your scheduled payment amount will be an amount equal to all of the interest charges that are scheduled to accrue on the Amount Financed each month ("Interest Only Payments").  This payment amount is shown in the first row of the Payment Schedule on Page 1.  After that, your scheduled payments will be principal and interest payments in an amount equal to that necessary to fully amortize the Amount Financed (principal) by the Contract Maturity Date at the Simple Interest Rate shown on Page 1, subject to a minimum of $25.00.  This payment amount is also shown in the Payment Schedule on Page 1.

This Contract is subject to a Simple Interest Rate, shown on Page 1, which applies a daily periodic rate (corresponding to the annual Simple Interest Rate) to the unpaid principal balance due under this Contract each day.  The Total of Payments amount shown in the Federal Truth-In-Lending Disclosure on Page 1 is based on the assumption that we will receive your scheduled payment on the payment due date each month.  If you make your payment earlier than the scheduled due date, or in an amount larger than required, this will have the effect of reducing the total amount of interest that accrues.  If you make your payment later than the scheduled due date, this will have the effect of increasing the total amount of interest that accrues.  As a result, the amount and timing of each payment that you make during the term of this Contract may affect the amount of your final payment, which may be larger or smaller than the scheduled payment amount shown in the Payment Schedule.

**Late Charge.**  If your scheduled payment is not received by the date specified in the section "Late Charge" in the Federal Truth-In-Lending Disclosure, you will be charged a late charge as set forth on Page 1.

**Prepayment.**  You may prepay all or a part of the unpaid balance at any time without penalty.  If you make a partial prepayment (that is, if your prepayment does not repay the entire outstanding balance), you are still required to make the next scheduled payment due, unless your outstanding balance is less than that amount, in which case your scheduled payment will be the remaining unpaid balance.  If you make a full prepayment, you may be entitled to a refund of a portion of any finance charge that we have collected that is in excess of the amount of finance charge that we were entitled to collect to the date of prepayment in full.  The amount of any such refund shall be calculated and refunded to you as prescribed by applicable state law.

**Collateral; Security Interest.**  If this Contract is for the purchase of goods, you have given us a security interest in or lien on the goods purchased with the Contract, as described on Page 1 (hereinafter "Collateral").  You understand that we may file a Uniform Commercial Code (UCC) financing statement as permitted by applicable law to perfect our security interest in the Collateral.  You promise to pay us an amount equal to the financing statement filing fee, if any, shown in the Itemization of Amount Financed on Page 1.  You agree that you will cooperate with us in doing anything necessary to help us perfect our security interest or maintain our security interest in the Collateral while you owe money under this Contract.  Unless we give our prior express written consent, you will not allow any other liens, security interests or encumbrances to attach to the Collateral.  Upon payment of all sums due under this Contract, we shall release our security interest in the Collateral.  To the extent permitted by law, you agree to pay us any costs associated with releasing our security interest, including the cost of filing any termination statement.

**Property Insurance.**  You promise to maintain property insurance coverage to protect our interest in the Collateral at all times.  The coverage must be in an amount sufficient to protect our security interest in the Collateral, and must protect against loss by theft, fire, and other hazards included in the term "comprehensive."  You may obtain the insurance from any insurer you want that is duly licensed to do business in the state in which the Collateral is located, provided such insurer is reasonably acceptable to us.  You may provide the insurance through an existing policy you own, or through a policy you obtain and purchase on your own.  If the insurance coverage used to protect the Collateral is a homeowner's policy of insurance you presently have or obtain, you promise to have us named as additional loss payee on such policy of insurance to protect our security interest in the Collateral.  You agree that you will provide us with satisfactory evidence of such coverage upon our request, and to provide such evidence within a reasonable period of time after you receive written notice of our request.

You understand and agree that if you do not provide us with evidence of the insurance coverage required by this provision, that we may, at our sole and exclusive option, purchase property insurance coverage to protect our security interest in the Collateral, and you agree to pay us for the coverage.  THE INSURANCE WILL NOT BE LIABILITY INSURANCE.  If you have not immediately paid us for such insurance and we have added the amount to the unpaid balance of your Contract, we may charge interest on any such amount we have paid for insurance until the effective date of the cancellation or expiration of such insurance, or until you have paid us in full for such insurance.  You understand that we are under no obligation to purchase insurance coverage to protect the Collateral, and that any insurance we may obtain may cost more, and provide you with less coverage, than insurance you may be able to obtain on your own.  We have the authority to obtain, adjust, settle or cancel insurance, and may endorse any party's name on any draft.

WARNING: Unless you provide us with evidence of the insurance coverage as required by our Contract, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the Collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere. You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

**Default.**  Each of the following shall constitute an event of default under this Contract.  You will be in default if:  (a) you fail to make any payment or perform any obligation you have under this Contract or any other agreement you have with us; (b) you have made a false or misleading statement in your credit application and/or in any of your representations to us while you owe money under this Contract; (c) you are the sole Buyer (or the sole remaining Buyer) under this Contract and you should die; (d) you should be involved in any insolvency, bankruptcy, receivership or custodial proceeding brought by you, or brought against you by another person or entity; (e) you use the Collateral in any illegal activity; (f) you do anything or fail to do anything that we believe endangers the Collateral; (g) a judgment or tax lien should be filed against you or any attachment or garnishment should be issued against any of your property or rights; or (h) we, in good faith, believe that your ability to repay amounts due under this Contract is or will soon be impaired, time being of the very essence.

**Remedies.**  Upon the occurrence of an event of default, and after providing you notice, if any, required by applicable law of your right to cure the default and you fail to cure the default in the time provided in such notice, we may require immediate repayment in full of the amounts remaining unpaid under this Contract.  To the extent permitted by applicable law, you individually and jointly waive presentment, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and any other notice that we are demanding payment in full due to your default under this Contract.  You understand that interest shall continue to accrue at the rate shown on Page 1 on the unpaid balance of this Contract after an event of default, until the outstanding balance is paid in full.

If you fail to pay the amounts you owe upon default, we may, to the extent permitted by applicable law, exercise our rights with respect to the Collateral.  We may require that you deliver the Collateral to us at a time and place of our choosing, or we may, at our sole and exclusive option, take possession of the Collateral.  You understand and agree that we may take possession of the Collateral without judicial process and you authorize a right of entry upon the premises where the Collateral is located for that purpose.  If, in taking possession of the Collateral, it is necessary for us to enter any dwelling or structure located on the premises where the Collateral, or any part of the Collateral, is located, we shall if required by applicable law, give you notice of our intent to do so, and you agree that you shall cooperate with us and/or our agent(s) in doing everything that we reasonably require to repossess the Collateral.  You understand that this Contract, the Uniform Commercial Code, and other applicable law authorizes us to take various actions to enforce this Contract, and we may rely on any or all of those provisions.  We may sell or dispose of the Collateral in any manner permitted by applicable law, and any resulting deficiency shall be immediately paid to us, to the extent allowed by applicable law.

MCGAIR v, SOLGEN POWER LLC, et al.,   Case No.  3:23-cv-00162-HZ
EXHIBIT  1 TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. (12)(b)(6)
14 of 15

## ADDITIONAL TERMS OF CONTRACT (Continued)

In the event that collection efforts are required to obtain amounts you owe us under this Contract, you agree to pay us all costs and expenses incurred by us in collecting the amounts owed, including court costs, private process server fees, investigation fees or other costs incurred in collection. If we (or any holder of this Contract) places this Contract for collection with an attorney who is not our salaried employee (or a salaried employee of the Contract holder), you also agree to pay reasonable attorneys' fees, even if a legal action is not brought, to the extent permitted by applicable law.

**Severability.** If any part of this Contract is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall remain in full force and effect.

**No Waiver.** Any delay by us in exercising any right, remedy, power or privilege under this Contract shall not be deemed a waiver of our right to exercise any such right, remedy, power or privilege at a later time.

**Other Provisions.** All of our rights under this Contract shall inure to the benefit of our successors and assigns, and all of your obligations under this Contract shall be binding upon your heirs or legal representatives or successors. You expressly authorize the use of electronic signatures, facsimile signatures, digital signatures, or other electronically generated signatures for purposes of signing/authenticating this Contract, and you understand that such signatures shall have the same legal force and effect as your original signature for purposes of this Contract or any documents related to this Contract.

**Assignability.** We may assign any rights we have under this Contract without obtaining your consent.

**Governing Law.** You understand and agree that this Contract will be governed by the laws of the State of Oregon, except to the extent that federal law controls.

### SIGNATURES

**BUYER**
**By signing below, you acknowledge that you have read this Contract, that you understand it, that you agree to its terms, and that you have received a completed copy of it.**

X *William G McGair*          02/04/2022   X _____
Buyer's Signature William McGair    Date      Buyer's Signature         Date

**SELLER**

By _Solgen Power_____    Its _____

**NOTICE:** The Seller intends to sell this Contract to Verity Credit Union, P.O. Box 75974, Seattle, WA 98175-0974, which, if it buys the Contract, will become the owner of the Contract and your creditor. After the sale of this contract, all question concerning either terms of the Contract or payments should be directed to the buyer of the Contract at the address indicated above.

### SELLER WARRANTY AND ASSIGNMENT

For value received, Seller hereby sells, assigns and transfers to **VERITY CREDIT UNION** ("Assignee") all rights, title, and interest Seller has which is related to Seller's financial interest in this Contract, provided, however, that none of Seller's obligations are conveyed to Assignee, all of which Seller retains. To induce Assignee to purchase this Contract, Seller represents and warrants to Assignee as follows:

1. This Contract is and will remain valid, binding and enforceable.
2. The Signature of any Buyer is genuine.
3. The subject goods have been delivered to the Buyer, and Buyer has purchased the same for the Buyer's own use and benefit.
4. All facts set forth in this Contract are true.
5. All statements of Buyer made on any forms related to this Contract are true to the best of Seller's knowledge, information and belief.
6. In relation to the transaction to which this Contract relates, Seller has complied with all applicable federal and state laws and regulations, including without limitation, the federal Truth-In-Lending Act and Equal Credit Opportunity Act.
7. If this Contract is made in connection with a Home Solicitation Sale as defined under applicable Oregon state law (Title 8, Chapter 83, Oregon Statutes), Seller has furnished all required notices and has complied with all applicable documentation and timing requirements of such law.

All representations and warranties of Seller state herein are made to induce Assignee to purchase this Contract; and, in the event of a breach, without regard to Seller's or Assignee's knowledge or lack of knowledge with respect thereto at the time of occurrence or otherwise, Seller will, upon the demand of Assignee, repurchase this Contract from Assignee for the entire balance then remaining unpaid. Seller waives all demands and notices of default and consents that, without notice to Seller, Assignee may extend time to or compromise or release, by operation of law or otherwise, any right against Buyer or other obligated party. **Seller agrees that this Contract is sold, assigned and transferred to Assignee with full recourse to Seller and subject to Seller's unconditional guarantee.**

**Assignment:** Seller does hereby assign this Contract to **Verity Credit Union, P.O. Box 75974, Seattle, WA 98175-0974**, under the terms of Seller's Warranty and Assignment.

**SELLER**

By _Solgen Power_____    Its _____    Date _____

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

MCGAIR v. SOLGEN POWER LLC, et al., Case No. 3:23-cv-00162-HZ
EXHIBIT 1 TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. (12)(b)(6)
15 of 15

Copyright 2020 ConmarSystems, Inc. - Retail Installment Contract - OREGON    Page 3 of 3    E-FORM No. 17948-5  Rev. 8/20